UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KAREN C.,

                         Plaintiff,

v.                                                      CASE NO. 1:25-cv-00439
                                                     (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 6, 9), as well as Plaintiff's reply brief (Doc. 10). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 6) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.     RELEVANT BACKGROUND

### A.  Procedural Background

On May 3, 2019, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of December 31, 2015.[1] (Tr. 131,

---

[1] During the hearing, Plaintiff's alleged onset date was amended to January 31, 2018.  (*See* Tr. 15.)

345-48.)  Plaintiff also protectively filed an application for supplemental security income, alleging the same onset date.  (Tr. 349-54.)  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 145, 146, 226, 227.)  She then timely requested a hearing before an Administrative Law Judge (ALJ) and appeared with counsel for a telephonic hearing before ALJ Stephen Cordovani on April 12, 2022.  (Tr. 38-83.)  On May 2, 2022, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 12-37.)  The Appeals Council denied her request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to the District Court in the Western District of New York.

The district court remanded the matter for further proceedings by stipulation of the parties. (Tr. 1284-86.)  On remand, the ALJ held another hearing on January 14, 2025. (Tr. 1211-51.)  Thereafter, on February 4, 2025, the ALJ issued another unfavorable decision, finding Plaintiff was not disabled. (Tr. 1188-1210.)  Plaintiff timely appealed to this Court.

### B.    Factual Background[2]

Plaintiff was born on February 6, 1983.  (Tr. 131.)  She had received vocational training in carpentry.  (Tr. 68.)  Her disabling conditions were initially alleged to include back pain, nerve damage, carpal tunnel syndrome, right hip pain, post traumatic stress disorder, bi-polar, depression, anxiety, agoraphobia, potential glaucoma, and a blood clot in right lung.  (Tr. 117-18,131-32.)  At her first hearing, her counsel clarified that her severe impairments were alleged to include degenerative disc issues in her back and hip, carpal tunnel, depressive disorder, panic disorder, and PTSD. (Tr. 45.)

---

[2] This recitation of facts primarily includes testimony from the two hearings before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

Plaintiff testified that she began receiving compensation for caring for her mother in April 2021, but she had been caring for her mother at the same level for six or seven months before then.  (Tr. 49, 1223.)  She described that she would prepare meals, help her mother with bathing, and sometimes do the laundry, although she may need help if her back went out. (Tr. 50-51, 1222-23.) She also coordinated her mother's doctor's appointments. (Tr. 51.) She also noted that, without assistance from her children and boyfriend, she would not be able to take care of her mother because they helped with the physical lifting that may be required for caring for her mother. (Tr. 1236.)

Plaintiff testified that she experienced pain in her lower back resulting from certain disc issues in her back, and she explained that the pain extends into the groin area and down her right leg. (Tr. 57-58.)  Plaintiff noted that she is sometimes pain free, but often, she experienced pain daily, although the extent of the pain varied depending on the level of physical activity. (Tr. 59.)  Plaintiff indicated that she could walk about a block or so but then her back and hip would begin to hurt.  (Tr. 60.)  She described that she could not sit or stand for too long before needing to move. (*Id.*)  She noted that she could not lift or carrying anything, as last time she did that she threw out her back. (Tr. 61.)  However, she did admit that she could lift a gallon of water. (*Id.*; *see also* Tr. 1237.) She described that she had difficulties with her right hand in that it would get tight with repeated use, such as when doing her hair. (Tr. 61-62, 63.)

Plaintiff discussed the medications and treatments she had tried, including injections in her back which she explained were not helpful.  (Tr. 64.)  She indicated that the medication did help, but she noted she experienced side effects that made it difficult

for her to function, making her very tired. (*Id.*)  She testified that her back condition worsened over time, causing her to have to seek care at the emergency room.  (Tr. 1225.)

Plaintiff explained that she had been diagnosed as bipolar, and that her moods changed fast and she had uncontrollable crying spells. (Tr. 65.)  She also described that, when she gets depressed, she cannot get out of bed. (Tr. 66.) She testified that the depression affected her ability to concentrate, pay attention, and focus. (Tr. 69.)  Plaintiff testified that her anxiety and depression had worsened over time. (Tr. 1224.)

**C.    ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023. (Tr. 1194.)

2.  The claimant has engaged in substantial gainful activity since January 31, 2018, the amended alleged onset date. (Tr. 1194.)

3.  The claimant has the following severe impairments: bipolar disorder, unspecified anxiety disorder, and posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)). (Tr. 1194.)

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 1194.)

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple instructions and tasks; can maintain attention and concentration and regular attendance at work for simple unskilled work; can work in a low stress work environment reflected by simple, unskilled work, with no supervisory duties, no independent decisionmaking, no goal setting, no strict production quotas as with assembly line work, and minimal changes in work routine and processes; can tolerate occasional interactions with supervisors, co-workers, and the general public; and can perform no team or tandem type tasks. (Tr. 1196.)

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965). (Tr. 1202.)

7. The claimant was born on February 6, 1989 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). (Tr. 1202.)

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964). (Tr. 1202.)

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).  (Tr. 1202.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). (Tr. 1202.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 31, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). (Tr. 1203.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the

Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B.      Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to

demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff asserts two arguments in support of remand. First, she argues that the ALJ did not account for her physical impairments in the RFC.  Second, she contends that the ALJ erred by finding consultative examining expert Dr. Echo's opinion only somewhat persuasive.

### A. The ALJ Properly Accounted for Plaintiff's Physical Impairments in the RFC.

Plaintiff recognizes that the ALJ found her physical impairments to be non-severe at step two of the sequential analysis, but contends this conclusion was error given the treatment records and imaging reports in the record that substantiate her complaints of pain and limitations.  (*See* Doc. 6-1 at 14-15.)  She further maintains that such an error is not harmless because the ALJ failed to consider the nonsevere physical impairments in formulating his RFC.  (*See id.* at 16.)

As a preliminary matter, a claimant's RFC is the most she can still do despite her limitations and is based on all relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion

"need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78. Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

At step two of the evaluation, the ALJ did not find any of Plaintiff's alleged physical impairments to be severe:

> The record shows the claimant was also medically managed for disc deformities and neuropathy in the right hip and back, for which testing was negative or mild (B19F/5-6), and were managed with conservative treatment (B19F); sprain and disc displacement of the cervical and lumbar spine, and right shoulder impingement syndrome and sprain following a motor vehicle accident, which chiropractic records show did not cause significant limitations (B21F); carpal tunnel syndrome was noted on EMG but there was little follow-up (B14F/8); glaucoma, for which treatment notes did not show any significant visual deficits, which suggested that the pressure in her eyes was managed with medication (B2F/4; B16F/1), and blood clot in the right lung, which was treated with surgical removal prior to the alleged onset date and was treated with medication (B4F/2-3; B14F/120).

(Tr. 1194.)

Nonetheless, the ALJ expressly stated that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (*See id.*)

While Plaintiff argues that the ALJ's conclusion these impairments were nonsevere is erroneous, she does not identify specifically what functional limitations she contends would be necessary. Rather, she focuses her argument on the ALJ's failure to consider her physical conditions when formulating the RFC, as the ALJ concluded that Plaintiff

could perform work at all exertional levels. (*See* Tr. 1196.) But, contrary to Plaintiff's arguments, the Court finds that the ALJ did consider her nonsevere physical impairments when formulating the RFC. Specifically, ALJ Cordovani expressly noted that he considered all impairments, including those which were nonsevere, in formulating the RFC. (*See* Tr. 1194.) Further, he analyzed Plaintiff's reported activities of daily living, noting they supported that Plaintiff could "function in excess of her reported limitations." (Tr. 1199.) He recognized that her reported activities, including those related to caring for her mother, "require[d] significant physical and mental demands, which are not consistent with the level of limitation [Plaintiff] alleges." (*Id.*)

The ALJ also evaluated those medical opinions addressing Plaintiff's physical impairments, demonstrating that he considered them as he formulated the RFC. He found the opinions of Dr. Phillips and Dr. Koenig persuasive:

> In November 2019, Dr. Phillips opined that the claimant's physical impairments were nonsevere (B3A; B4A). In April 2021, Dr. Koenig affirmed the opinion that the claimant's physical impairments were nonsevere upon further reconsideration of the evidence in the record (B12A; B14A). I find these opinions persuasive because they are supported by specific references to the record and are consistent with the claimant's activity level as detailed above, they are consistent with one another, and they are consistent with the treatment record with relatively benign findings on examination and modest course of treatment.

(Tr. 1200.)

However, he did not find the opinion of Dr. Paolino to be persuasive:

> In 2020, Dr. Paolino opined that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand/walk for 4 hours during an 8- hour workday. She could sit for 6 hours during an 8-hour workday. It was noted that she was generally limited to sedentary work. She could occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She can frequently balance and stoop, occasionally crouch, and never kneel or crawl (B7A; B8A; B9A; B10A; B11A; B12A). I do not find this opinion persuasive because it is not supported with explanation or

9

reference to the record and it is inconsistent with the treatment record showing normal to mild imaging studies and physical examinations (B14F/2; B19F/10, 19, 26).

(*Id.*)  The Court notes that Plaintiff does not challenge the ALJ's evaluation of any of these opinions.

Indeed, Plaintiff does not identify any qualitative functional limitations that she contends should have been included in the RFC, and it remains her burden to prove a more restrictive RFC.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (noting that a plaintiff has the burden to prove a more restrictive RFC).  Moreover, as the ALJ recognized, the record reflects that she managed her back and hip impairments through conservative treatment, and objective test results for those impairments were negative or mild.  (*See* Tr. 1194) (citing Tr. 1136-37.)  And it is well-settled that the mere mention of a medical condition does not automatically translate to functional limitations or into disability.  *Ashley E. v. Comm'r of Soc. Sec.*, No. 622CV299GTSCFH, 2023 WL 6217792, at *7 (N.D.N.Y. Aug. 21, 2023), *report and recommendation adopted,* No. 622CV0299GTSCFH, 2023 WL 6215829 (N.D.N.Y. Sept. 25, 2023) (recognizing that "a reference to a medical condition or a diagnosis does not establish functional limitations") (citing *Crysler v. Astrue,* 563 F. Supp. 2d 418, 440 (N.D.N.Y. 2008)). Because there are no functional limitations pertaining to Plaintiff's physical impairments, the ALJ correctly did not include any restrictions within the RFC.

Plaintiff further argues that the ALJ should have developed the record with a retrospective opinion from one of her providers.  (*See* Doc. 6-1 at 16.)  The Court acknowledges that "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial

nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). *See also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("[An] ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability.")  Here, there was sufficient evidence in the record for the ALJ to make a determination, and thus the ALJ was not obligated to obtain further medical evidence.[3]

Accordingly, the Court finds no error in the ALJ's evaluation of Plaintiff's physical impairments or his decision not to include limitations pertaining to them in the RFC.

### B.  The ALJ Properly Evaluated Dr. Echo's Opinion.

Plaintiff argues that the ALJ improperly discounted Dr. Echo's more restrictive opinion because the closed period ended when she became her mother's caregiver.  (*See* Doc. 6-1 at 18.)  Plaintiff maintains that undertaking the care of her mother cannot be held against her because it did not occur in a formal work setting and does not clearly show that she is capable of working.  (*See id.*)

With regard to an ALJ's consideration of medical opinion evidence, the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, provide that the Commissioner is no longer required to afford any

---

[3] Moreover, the Court notes that Plaintiff failed to attend a scheduled consultative examination.  (*See* Tr. 462-63.)

specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).[4]

Consultative examiner Dr. Joyce Echo issued the following medical source statement:

> The claimant has adequate auditory comprehension and understanding instructions adequately expressive language to respond in a reciprocal manner. There were notable deficits in attention and concentration, and memory. There was a memory encoding deficit, she would have significant difficulty following through recalling instructions, even prompts or cues or minimal benefit. Attention and concentration are variable and difficulties with more complex attentional tasks. She would unlikely be able to keep a reasonable [sic] in a consistent manner, particularly involved multitasking. There is no indication of malingering. The claimant is deemed adequate to manage her funds.

---

[4] With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

(Tr. 806.)

> The ALJ found Dr. Echo's opinion to be somewhat persuasive:

> I find her opinion somewhat persuasive because it is supported by an examination of the claimant and consistent with some memory and concentration deficits in the treatment record. However, it is inconsistent with the claimant's activity level as she is now a primary caregiver for her mother which in and of itself would require attention and concentration that seemingly exceeds the limits of this opinion. Further, I find the opinions of Drs. Foley and Dekeon more persuasive to the extent there are any discrepancies because they are more functionally specific, better supported by references to the record, and more consistent with the treatment record (B3A; B13A). The limitations expressed in this opinion are largely incorporated into the claimant's residual functional capacity which provides for only simple instructions and tasks and simple unskilled work which would not involve multitasking as that is more consistent with detailed or complex work which is precluded by the residual functional capacity.

(Tr. 1201.)

The Court finds no error in the ALJ's analysis. As Defendant points out, the ALJ "reasonably found Dr. Echo's opinion only somewhat persuasive because, although it was supported, it was inconsistent with other evidence in the record." (*See* Doc. 9-1 at 10[5].) Specifically, the opinion was inconsistent with Plaintiff's daily activities of caring for her mother, and the ALJ reasonably found the opinions of Dr. Foley and Dr. Dekeon more persuasive. While Plaintiff argues that her caring for her mother does not support the ALJ's assessment that she was capable of more than what Dr. Echo opined, the Court disagrees. Plaintiff testified that she: (1) cared for her mother twenty-four hours a day, seven days a week; (2) she prepared her meals, did her laundry, and assisted her with personal care tasks, such as bathing, dressing, etc.; and (3) she handled coordinating her mother's medical care. (*See* Tr. 51, 1222, 1223). The mere fact that such care occurred at home does not render these activities any less instructive as to her

---

[5] For clarity, the Court cites to the ECF numbers, not the page numbers used by Defendant.

13

capabilities.  *See Georgiana W. v. Comm'r of Soc. Sec.*, No. 20-CV-6051MWP, 2021 WL 2809553, at \*10 (W.D.N.Y. July 6, 2021) (affirming that the ALJ's conclusion that the plaintiff's "ability to, among other things, 'volunteer at her children's school *for day long activities*" and "care for elderly relatives and neighbors" was at odds with [the medical] opinion that she was limited in her ability to maintain regular attendance and be punctual within customary, usually strict tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.'"); *see Fischer v. Comm'r of Soc. Sec.*, 18-cv-1467, 2020 WL 4731878, \*4 (W.D.N.Y. Aug. 14, 2020) (finding it permissible for the ALJ to consider plaintiff's testimony that she was able to, among other things, cook, clean, do laundry, shop, and that she had cared for her elderly mother, in weighing medical opinion evidence and reaching RFC determination).[6]

Additionally, the ALJ reasonably found the opinions of Dr. Foley and Dr. Dekeon more persuasive.  Dr. Foley, who had the opportunity to consider Dr. Echo's opinion, concluded that Plaintiff could sustain mental pace, persistence, concentration, and attention to simple, repetitive tasks for at least two-hour segments during a normal workday.  (*See* Tr. 128-29.)  Similarly, after considering Dr. Echo's opinion in light of the medical record, Dr. Dekeon imposed only functional limitations in interacting with others.  (*See* Tr. 200-01.)  Thus, both of these opinions support the ALJ's RFC.

---

[6] Plaintiff's reliance on *Colgan v. Kijakazi* is misplaced.  In that case, the record reflected that the plaintiff "could to some extent care for her two young children and engage in activities necessary for her own welfare."  S*ee Colgan v. Kijakazi*, 22 F.4th 353, 363 (2d Cir. 2022).  The Second Circuit ruled the ALJ erred in rejecting the treating physician's opinion in light of the plaintiff's efforts in this regard.  *See id.*  However, in the present case, Plaintiff was caring for her mother, and being compensated for her efforts, at a full-time level.  (*See* Tr. 1222, 1223.)  Thus, unlike in *Colgan*, whose actions were to care for her children "to some extent," Plaintiff solely cared for her mother.

Moreover, it is important to note that the ALJ's RFC is largely consistent with Dr. Echo's limitations.  (*See* Tr. 1201) (noting that "[t]he limitations expressed in [Dr. Echo's] opinion are largely incorporated into the claimant's residual functional capacity which provides for only simple instructions and tasks and simple unskilled work which would not involve multitasking as that is more consistent with detailed or complex work which is precluded by the residual functional capacity.")  Plaintiff does not explain what additional restriction identified by Dr. Echo should have been incorporated into the RFC, and because the burden of proving a more restrictive RFC rests with Plaintiff, the Court cannot find Plaintiff has carried this burden. *See Smith*, 740 F. App'x at 726.

Finally, Plaintiff's arguments, at their core, are an invitation to this Court to reweigh the evidence, which is simply not a basis for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.")); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016)).  The Court is plainly prohibited from re-weighing the evidence.  *See Krull*, 669 F. App'x at 32.  And while Plaintiff identifies certain evidence that may be viewed as supporting her position, she at most identifies a conflict in evidence, which is to be resolved by the ALJ.  *See Veino*, 312 F.3d at 588.  And once resolved by the ALJ, the factual findings cannot be overturned by this Court unless "a reasonable factfinder would *have to conclude otherwise*."  *Brault*, 683 F.3d at 448 (emphasis in original) (citation omitted).

Therefore, the Court finds no error in the ALJ's evaluation of Dr. Echo's opinion.

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 6) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: August 6, 2026                                    J. Gregory Wehrman
Rochester, New York                                    HON. J. Gregory Wehrman
                                                        United States Magistrate Judge